IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

| | |
|---|---|
| JOHN J. BOSO and TREVOR WILSON,<br><br>**Plaintiffs**,<br><br>v.<br><br>G. RUSSELL ROLLYSON, JR., Deputy Commissioner of Delinquent and Non-Entered Lands of Pocahontas County, West Virginia, in his official and personal capacities,<br><br>and<br><br>SHARON ZUCKERMAN,<br><br>**Defendants**. | CIVIL ACTION NO.): 2:22-CV-17<br>(JUDGE KLEEH) |

### REPORT AND RECOMMENDATION, RECOMMENDING THAT *PRO SE* DEFENDANT ZUCKERMAN'S MOTION TO DISMISS [ECF NO. 4] BE DENIED

This matter is before the undersigned Magistrate Judge pursuant to a Referral Order [ECF No. 6] entered by the Hon. Thomas S. Kleeh, Chief United States District Judge, on May 31, 2023. By the Referral Order, Judge Kleeh directed the undersigned to enter orders or report and recommendations, as appropriate, and to handle other matters which arise herein.

Presently pending before the Court is a motion to dismiss [ECF No. 4] filed by *pro se* Defendant, Sharon Zuckerman ("Zuckerman") on May 31, 2023. The Court also is in receipt of Plaintiffs' response [ECF No. 54] in opposition to Zuckerman's motion, and memorandum in support, thereof [ECF No. 55], filed on August 14, 2023. The Court also is in receipt of several other filings [ECF Nos. 40, 41, 66, 73] which the undersigned construes to be, collectively,

1

Zuckerman's reply in support of her motion to dismiss (or, at least, are intended to bolster the arguments in support of the motion to dismiss).[1]

Upon a detailed review of the arguments summarized in the filings noted above, and after a thorough review of the record and pertinent legal authority, the undersigned **RECOMMENDS** that Zuckerman's motion to dismiss [ECF No. 4] be **DENIED** as more fully set forth herein.

## I. FACTUAL BACKGROUND, PLAINTIFFS' ALLEGATIONS, AND ZUCKERMAN'S ARGUMENTS FOR DISMISSAL

This matter concerns a tract or parcel of real property in Pocahontas County, West Virginia. Plaintiffs allege that Zuckerman acquired a deed to the property by improper and illegal operation of the tax lien sale process. Plaintiffs claim that they have certain, respective right, title and interest in and to the property, and that the deed which Zuckerman acquired in the tax lien sale process should be set aside.

### A. The Tax Lien Sale Process

In general terms, the tax lien sale process in West Virginia operates as follows. The state assesses *ad valorem* taxes on a given tract or parcel of real property. The *ad valorem* taxes operate as a lien on that property.[2] If *ad valorem* taxes are unpaid, the Deputy Commissioner of Delinquent and Non-Entered Lands ("Deputy Commissioner") for the county in which the real estate is situate may ultimately sell, at public auction, the tax lien resulting from unpaid taxes. (The Deputy

---

[1] Zuckerman's filing of August 21, 2023 [ECF No. 66] appears to be lodged also in support of her corresponding filing, styled as a "motion to compel." [ECF No. 39]. Zuckerman's filings noted here are in support of the motion to compel, in addition to being in support of the motion to dismiss. In any event, by the motion to compel [ECF No. 39], Zuckerman requests that the Court order Plaintiffs to act in compliance with her reading of W. Va. Code § 11A-4-4. The application of W. Va. Code § 11A-4-4 is one subject of Zuckerman's motion to dismiss [ECF No. 4], which the instant Report and Recommendation addresses. The undersigned addresses the motion to compel by corresponding Order, entered concurrently herewith.
[2] In West Virginia, assuming that real property is not otherwise exempt from *ad valorem* taxes, a tax lien attaches to real property on July 1 of a given calendar year. W. Va. Code § 11A-1-2. The tax lien becomes payable on September 1 of the following calendar year. W. Va. Code. § 11A-1-3. Thus, the state always maintains a tax lien on real estate, as the lien attaches the year prior to it becoming payable.

Commissioner operates as part of the West Virginia State Auditor's Office). The high bidder/purchaser of the tax lien (if there is a successful high bidder) must follow a process, set forth in statute, to ultimately receive a deed to the real estate from the Deputy Commissioner. See W. Va. Code § 11A-1-1 et seq.

The tax lien purchaser must perform certain due diligence and cause notice to be given to all parties who are entitled to such notice. In the process, one of two results often occurs: (1) either a tax lien purchaser follows the necessary process and ultimately receives a proper tax deed to the real estate, or (2) within certain timeframes, a party who has a proper interest in the real estate "redeems" the past-due *ad valorem* taxes (by paying the amount of taxes due, plus an amount of interest) to stop the issuance of a tax deed. Id.

However, a third result may occur: if a tax deed is issued, a party who claims that they were entitled to (and did not receive) proper notice of the tax lien sale, may, within certain parameters and timeframes, seek to have the tax deed set aside. Id. Plaintiffs herein bring this action to so set aside the tax deed (and to pursue other, related claims for relief, including a claim that they were unconstitutionally denied due process).

Of particular note, the tax lien sale process in West Virginia recently has undergone significant revision by an Act of the Legislature in 2022, by operation of Senate Bill 552. The sale of the tax lien at issue in the instant matter occurred in 2020, and Plaintiffs filed their Complaint in 2022. As a result, there is disagreement between the parties hereto about the applicable law to this matter, which the undersigned addresses in more detail below.

### B. The Real Estate and Tax Lien Sale at Issue

Plaintiffs allege that they are the rightful title holders of record for the subject real estate ("Subject Property"), which is identified as Lots 19A-19B of M & E Farm Subdivision, and

3

described as containing 3.02 acres, more or less, and situate in Huntersville District, Pocahontas County, West Virginia. [ECF No. 1, at 2].

Plaintiffs further allege as follows. Plaintiff John J. Boso ("Boso") acquired the Subject Property by operation of that deed dated June 21, 2019, of record in the Office of the Clerk of the County Commission of Pocahontas County, West Virginia ("Clerk's Office"), in Deed Book 380, at Page 485, by which Raymond K. Coleman, Jr. a/k/a Raymond K. Coleman and Patricia A. Coleman, husband and wife, conveyed the same to Boso. Id. Then, on September 27, 2021, Boso entered into a contract to sell the Subject Property over a certain amount of time (and appears to be what is commonly referred to as a "land contract") to Plaintiff Trevor Wilson ("Wilson"). The contract is of record in the Clerk's Office in Deed Book 396, at Page 295. Id. No other conveyances concerning the Subject Property appear of record after this time, except for the tax deed in question. Id., at 3.

As to the tax deed, Plaintiffs allege that Defendant G. Russell Rollyson, Jr. ("Rollyson") acts as the Deputy Commissioner. Id., at 1-2. As such, the West Virginia State Auditor's Office has delegated to Rollyson, pursuant to applicable statutes, certain power and authority to handle tax lien sales. Id., at 2. Moreover, Rollyson determines when a tax deed may issue as a result of the tax lien sale process, and actually executes tax deeds, thus exercising governmental authority to transfer real property from one record title holder to another. Id.

Plaintiffs further allege that, in 2020, Zuckerman was the high bidder at the auction of the tax lien for the Subject Property. Id. The tax lien sold was for unpaid 2019 taxes. Id., at 3. At the time of that tax lien sale, the Subject Property was designated as a Class II property for taxation purposes. Id.[3] Plaintiffs allege that Zuckerman did not follow the required process after the tax lien

---

[3] Under West Virginia Code, different types of property (both real and personal) are assigned different classifications, which dictates the rate of taxation levied. W. Va. Code § 11-8-5. Class I property includes

4

sale, and thus received an improper tax deed to the Subject Property from Rollyson. Id. In particular, Plaintiffs allege that Zuckerman was required to provide to Rollyson a complete and proper list of all persons who were entitled to receive notice of the tax lien sale and who held the right to redeem the delinquent taxes. Id. However, Plaintiffs allege, Zuckerman failed to do so. Thus, Plaintiffs allege, as part of the usual process for Rollyson to send notice to interested parties, Plaintiffs were omitted from the list and were not given proper notice of the tax lien sale. Id. Therefore, Plaintiffs allege that they were denied the opportunity to redeem the taxes and stop the tax deed from issuing to Zuckerman. Id.

More particularly, Plaintiffs allege that, because the Subject Property was designated as a Class II property, West Virginia Code requires physically delivering a notice of the right to redeem to "occupant" of the property. Id., at 3-4. However, Plaintiffs allege, Zuckerman and Rollyson failed to assure that such notice was given. Id. Moreover, Plaintiffs allege that Zuckerman failed to meaningfully search the public record for the identities of all parties to whom notice of the tax lien sale (and right to redeem) must be given. Id. If Zuckerman had done so, Plaintiffs allege, the search would have yielded pertinent instrument(s) of record in the Clerk's Office, revealing the identity(ies) of other person(s) entitled to such notice. Id.[4] Instead, Plaintiffs allege, Zuckerman

---

certain types of personal property. Id. Class II property (which Plaintiffs herein allege the Subject Property to have been designated) includes, *inter alia*, "[a]ll property owned, used and occupied by the owner exclusively for residential purposes." Id. Class III property is real and personal property located outside of municipalities which is not otherwise Class I or Class II property. Id. And Class IV property is real and personal property located inside of municipalities which is not otherwise Class I or Class II property. Id.
[4] The contract to sell the Subject Property from Boso to Wilson was not entered into until September 27, 2021, so it is not certain, at this stage of the litigation, that a diligent search of the public record after the 2020 tax lien sale would have yielded Wilson as a party entitled to notice. In any event, it appears that Plaintiffs' principal argument on this point is that Defendants failed to assure that physical notice to "occupant" of the Subject Property was given. It is unclear at this stage of the litigation who the actual "occupant" of the Subject Property would have been at the time such notice would have been given. But Plaintiffs' argument seems to be that there was no required notice to "occupant," whoever that may have been, and that alone is sufficient to proceed with their claims at this stage.

provided to Rollyson only the names of Raymond Coleman and Patricia Coleman, the above-noted grantors of the 2019 deed of the Subject Property to Boso. [ECF No. 55, at 2; ECF No. 8, at 5].

Plaintiffs allege that they have suffered certain injuries, namely, "monetary loss, stress, anxiety, emotional distress, and mental anguish" as well as loss of the Subject Property and the creation of a cloud on the title thereto. [ECF No. 1, at 4]. Plaintiffs seek actual damages, punitive damages, attorney's fees and costs, and declaratory and injunctive relief to set aside the tax deed. Id., at 5-6.

### C. Zuckerman's Motion to Dismiss

By her motion to dismiss, Zuckerman posits the following:[5] (1) Wilson was merely a tenant of Boso, and thus was not an owner of the Subject Property entitled to a notice of the tax sale and the right to redeem, (2) the Subject Property was erroneously classified as a Class II property, and as such, there was no requirement to physically deliver notice to "occupant" as West Virginia Code requires for a Class II property, (3) Plaintiffs did not deposit with the Court, as a condition precedent to instituting this lawsuit, the monies required to be so deposited under the current version of W. Va. Code § 11A-4-4(b)[6], and (4) the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000.00 needed to establish diversity jurisdiction.[7]

In response, Plaintiffs state that they have met the required, minimal pleading requirements at this stage of the litigation. [ECF No. 8, at 3-4]. More particularly, they argue that they have clearly alleged that there was not physical service of the notice upon the Subject Property or

---

[5] Zuckerman's arguments set forth in the motion to dismiss are not entirely clear. Nonetheless, the undersigned summarizes and construes them as lucidly as possible.

[6] This requirement for the depositing of monies was recently established in West Virginia Code as a result of the Legislature's passage of Senate Bill 552 in 2022, noted above. This statutory change and its applicability to the instant case are evaluated otherwise herein.

[7] In the motion to dismiss, Zuckerman also argues about the amount Plaintiffs would be required to pay to redeem the taxes on the Subject Property. However, it does not appear to be the basis of an argument to actually dismiss the action, so the undersigned analyzes it no further at this time.

"occupant," contrary to the statutory requirement to do so. Further, they point out that they have lodged a claim under federal law (under 42 US.C. § 1983), thus invoking the Court's federal question jurisdiction, such that Zuckerman's argument about lack of diversity jurisdiction is inapposite. [ECF No. 8, at 4]. Finally, by their supplemental memorandum [ECF No. 55], Plaintiffs argue why they are not required to deposit monies with the Court as a condition precedent to proceeding with their lawsuit.

## II. REVIEW AND ANALYSIS

### A. The legal standard for a *pro se* party is forgiving, although it demands that a *pro se* party provide some legitimate basis.

Because Zuckerman is proceeding *pro se*, the Court must liberally construe her arguments. See generally Estelle v. Gamble, 429 U.S. 97, 106 (1976); Love v. Armistead, 582 F.2d. 1291, 1295 (4th Cir. 1978). However, it is not the Court's role to rewrite Zuckerman's arguments. See generally Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct a *pro se* party's legal arguments for them, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B. The standards for a motion to dismiss establish minimal pleading standards, such that a movant has a high threshold in order to succeed.

To survive a motion to dismiss, the rules which govern civil actions require Plaintiffs only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, a complaint must set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).[8] Under seminal civil procedure caselaw, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

---

[8] In the motion to dismiss, Zuckerman also cites Fed. R. Civ. P. 12(b)(h), concerning when certain defenses are preserved or waived. [ECF No. 4, at 16]. However, it is not clear how Zuckerman relies on this provision beyond a mere citation to it, so the undersigned does not further analyze it here.

v. Twombly, 550 U.S. 544, 570 (2007). In reliance on Twombly, the Supreme Court has emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, this is not a difficult threshold for a claimant to clear. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 663.

### C. The applicable statutory scheme for this matter is that which was in place at the time of the tax lien sale in 2020.

As noted elsewhere herein, West Virginia's statutory scheme for tax lien sales and perfecting deeds to real property resulting therefrom underwent a major revision in the 2022 Regular Session of the West Virginia Legislature, with the passage and enactment of Senate Bill 552. Zuckerman argues that the applicable statutory scheme is the one which presently is enacted, not the one which was effective at the time of the tax lien sale herein in 2020. [See ECF No. 4, at 8; ECF No. 39; ECF No. 40]. However, the weight of applicable legal authority does not favor Zuckerman here, and the undersigned evaluates the issues before the Court through the lens of the prior-enacted statutes which were effective at the time of the tax lien sale.

To begin, a foundational West Virginia statute, set forth among a collection of certain canons of statutory construction, provides succinctly that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." W. Va. Code § 2-2-10(b)(6) (emphases added). In a review of both Senate Bill 552 and the statutory scheme for tax lien sales otherwise, the undersigned located no provision by which the Legislature states, or even gives a tacit indication, that later-enacted statutes here are intended to apply retrospectively. This conclusion is only bolstered by relevant caselaw:

8

> We begin with the statutory proposition that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." W.Va. Code § 2-2-10(bb) (2013). "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect. Syl. pt. 4, Taylor v. State Compensation Comm'r, 140 W.Va. 572, 86 S.E.2d 114 (1955)." Syl. Pt. 2, In re Petition for Attorney Fees and Costs: Cassella v. Mylan Pharm., Inc., 234 W.Va. 485, 766 S.E.2d 432 (2014).

Martinez v. Asplundh Tree Expert Co., 239 W. Va. 612, 616, 803 S.E.2d 582, 586 (2017). Specifically, in the context of the tax lien sale process, this Court previously has concluded, in regard to the 2022 changes to the statutory scheme, that the prior statutes are applicable to acts occurring at the time when those prior statutes were operable. "[B]ecause the events here occurred prior to June 10, 2022, the prior statutory scheme applies in this case, and all citations are to the prior statutes." Cutlip v. Rollyson, No. 1:21CV138, 2022 WL 4295281, n.2 (N.D.W. Va. Sept. 16, 2022)(citing Martinez, 803 S.E.2d 582).

Zuckerman provided a reply brief [ECF No. 66, at 4-5] in support of her related motion to compel [ECF No. 39], but which the undersigned construes as also being filed in support of the motion to dismiss [ECF No. 4] which is the subject of this Report and Recommendation. In this brief, Zuckerman distinguishes between statutes which are either substantive or procedural in nature, seeming to suggest that certain statutes should be operable herein in favor of her arguments. Seemingly, Zuckerman argues that recently-enacted statutes reviewed herein are procedural such that they should have retrospective application.

To be sure, in some contexts, courts have distinguished between substantive and procedural statutes to determine whether they are retrospective, or only prospective, in application. See generally Sizemore v. State Workmen's Comp. Com'r, 159 W. Va. 100, 100, 219 S.E.2d 912, 912 (1975). But in the context of the instant matter, the undersigned does not recommend that the

9

recently-enacted statutes for tax lien sales at issue herein be deemed merely procedural with retrospective application. After all, as noted above, there is no authority to suggest that the Legislature at all intended the new statutory scheme to be retrospective. And this makes practical sense. The statutory scheme for *ad valorem* taxation, tax lien sales, and tax deeds is, indeed, complicated and esoteric. To suggest that the Legislature intended such a statutory scheme to be "hybrid" – requiring practitioners, courts, and others to toggle between earlier- and later-enacted statutory schemes, depending on the context of a particular tax sale or dispute, without specific findings or directives that that was the Legislature's intent – strains credulity and practicality.

Moreover, without more authority otherwise, the undersigned is <u>not</u> inclined to find and recommend that anything about such a statutory scheme is merely procedural in nature. The statutory scheme sets forth a process by which persons may be deprived of a foundational constitutional right – that is, the right to acquire and hold property. U.S. Const. amend. V, XIV. In other words, any process in this context is inextricably intertwined with substantive rights. Thus, without definitive authority on this exact point regarding the tax lien sale process, the undersigned declines to find that the statutes about which Zuckerman argues are merely procedural in nature.

Accordingly, the undersigned **FINDS** that the applicable statutes herein are those which were applicable at the time of the tax lien sale about which Plaintiffs herein complain.

> **D. Plaintiffs should be permitted to proceed on the ground that "occupant" of the Subject Property was not served with notice, regardless of Wilson's status, and irrespective of Zuckerman's argument that the Subject Property was misclassified for taxation purposes.**

Zuckerman argues that Wilson is not an "owner" of the Subject Property who was entitled to notice, and that in any event, the Subject Property was misclassified as a Class II property such that service of notice on "occupant" was not required. However, Plaintiffs have met the minimal pleading standard on these issues at this stage of the litigation.

*1. Wilson's status*

First, as to Wilson's status, it does not appear from the undersigned's review of the Complaint that Plaintiffs argue that Wilson was an "owner" necessarily entitled to direct notice himself. Rather, it appears that Wilson is included as a necessary party to the litigation, whose rights concerning the Subject Property are directly affected as a result of the myriad of issues raised herein.

As the litigation develops, factual revelations may yield more information on this point. But at the present stage, there seems to be no argument whatsoever that Wilson is the purchaser under the contact for the sale of the Subject Property dated September 27, 2021. As such, Wilson has certain rights thereto and is properly included, at least at this stage, as a necessary party. See generally Teamsters Loc. Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917 (4th Cir. 1999). Thus, the undersigned **FINDS** that Wilson should not be dismissed as a party on this basis.

*2. Classification of the Subject Property and the Type of Notice Required*

Second, Zuckerman takes issue with the Subject Property being classified as Class II on the 2019 tax ticket, the lack of payment of which gave rise to the tax lien sale at issue. [ECF No. 4, at 5]. However, it is inappropriate for the undersigned to engage in a review of how the Subject Property was classified. After all, Zuckerman provides no mandatory authority in this context for this Court to review how state taxation authorities classify property, and then decree that it be reclassified. And the undersigned is aware of no such authority. The undersigned thus reviews the matter in light of how the Subject Property actually was classified, as Class II.

Under the operable statute at the time of the tax lien sale, in order to perfect a tax deed, a tax lien purchaser must, *inter alia*, "provide the State Auditor with the physical mailing address of the property that is subject to the tax lien or liens purchased" if the property is a Class II property.

W. Va. Code § 11A-3-19(a)(2) (2018).[9] Then, under W. Va. Code § 11A-3-19(a)(1), tax lien purchasers were required to prepare, for the State Auditor, a list of those to be served with notice to redeem; that statute in turn required such notice to be provided as set forth in W. Va. Code § 11A-3-21 and § 11A-3-22. Under W. Va. Code 11A-3-21 (2010), the State Auditor was prescribed the form of the notice to be given. Under W. Va. Code 11A-3-22(e) (2020), for Class II property, the State Auditor was to mail notice to "occupant" of the same.

A plain reading of the applicable statute shows that "occupant" of the Subject Property was to be given notice. While Zuckerman questions whether the Subject Property was properly classified, nothing yet provided herein shows Plaintiffs to be incorrect in the assertion that the Subject Property was, indeed, classified as Class II by pertinent taxing authorities at the time of the tax lien sale. And nothing herein shows Plaintiffs to be plainly incorrect that "occupant" was not served with notice. Thus, because the undersigned declines to find that the Class II designation should be revisited, the undersigned **FINDS** that, on this issue, Plaintiffs have made the requisite showing under Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure to withstand the motion to dismiss.

### E. Plaintiffs are not required to deposit monies with the Court as a condition precedent to litigating their claims.

Despite Zuckerman's insistence to the contrary, Plaintiffs are not required to deposit with the Court monies in the amount required to redeem the taxes at issue. This is based on the undersigned's finding, set forth above, that the prior statutory scheme applies here.

Further explanation of the bases of Plaintiffs' statutory claims is helpful. Plaintiffs seek to set aside the tax deed under two alternative theories of relief provided by statute. First, they seek

---

[9] As noted above, the statutory scheme for tax lien sales underwent a major revision in 2022 by operation of Senate Bill 552. This same requirement pertaining to Class II properties was recodified in that process at W. Va. Code § 11A-3-52.

to set aside a "deed improperly obtained" under W. Va. Code § 11A-4-3. Second, the seek to set aside a deed for lack of notice to a party entitled to notice under W. Va. Code § 11A-4-4.

The former, W. Va. Code § 11A-4-3, was amended in the course of the above-noted 2022 revisions. In neither version does the statute require a plaintiff to deposit with the court the amount of money which would be needed to redeem the delinquent taxes. Yet, Zuckerman seems to argue that it <u>does</u> require such payment of monies. [ECF No. 66, at 6-7]. However, as noted above, the undersigned **FINDS** that the prior version of the statute governs here, and as such, looks to the 1994 version which was effective at the time of the tax lien sale. That statute required:

> No deed shall be set aside under the provisions of this section, except in the case of redemption, until payment has been made or tendered to the purchaser, or his heirs or assigns, of the amount which would have been required for redemption, together with any taxes which have been paid on the property since delivery of the deed, with interest at the rate of twelve percent per annum.

W. Va. Code § 11A-4-3(b) (1994). However, the payment contemplated therein is to be made in the course of litigation (and to the purchaser, not the court) if a claimant is successful in challenging the deed. In the instant matter, at this juncture, Plaintiffs have not been successful in having the Court order that the deed be set aside. Thus, to require them to pay monies under this provision is premature.

The latter, W. Va. Code § 11A-4-4, also was amended in the course of the 2022 statutory revisions. Under the prior version, a plaintiff was <u>not</u> required to deposit with the clerk monies equal to the amount required to redeem the delinquent taxes. However, under the amended version, a plaintiff <u>is</u> so required to deposit monies. Zuckerman does indeed argue that Plaintiffs are required to deposit monies with the Court pursuant to the newly-enacted version of the statute. As set forth above, however, the undersigned **FINDS** that the prior version of the statutes is applicable to this matter. The tax lien sale at issue occurred in 2020, while the statute by which Zuckerman

13

argues was enacted in 2022. Thus, because the undersigned **FINDS** that the prior version of the statute is applicable, the undersigned further **FINDS** that Zuckerman's motion to dismiss is unfounded on this point.

**F. The Court has subject matter jurisdiction.**

Zuckerman makes several arguments that the Court lacks subject matter jurisdiction. The undersigned addresses them in turn.

*1. Federal Question Jurisdiction*

Zuckerman argues that the amount in controversy herein is not greater than $75,000.00, which is required to establish diversity jurisdiction. [ECF No. 40, at 7]. As such, she argues that the Court has no jurisdiction and that her motion to dismiss should be granted.

Indeed, Zuckerman is correct that in order for diversity jurisdiction to lie in federal court, the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332(a). However, Plaintiffs very clearly rely instead on federal question jurisdiction to bring their claims. [ECF No. 1, at 1; ECF No. 8, at 4]. Plaintiffs invoke 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") This involves their first claim for relief, under 42 U.S.C. § 1983 by which they allege that their constitutional rights have been violated by the alleged deprivation of property.

Thus, the undersigned **FINDS** that, so far as Plaintiffs have pled a claim under federal law, the motion to dismiss fails on this point. Further, to be clear, and to the extent which Zuckerman may be arguing to the contrary, the undersigned further **FINDS** that, without a showing to the contrary at this time, supplemental jurisdiction lies as to the related state law claims (pursuant to 28 U.S.C. § 1367).

*2. Miscellaneous Arguments*

Zuckerman argues, without any citation to authority, that (1) individuals such as herself are not liable for constitutional violations, (2) that Boso has no legal easement to the Subject Property because he no longer owns another adjoining property, and as such, has no constitutional due process rights to the Subject Property, and (3) Wilson is merely a tenant to the Subject Property, and as such, has no constitutional rights to the Subject Property. [ECF No. 40, at 7-10].

Zuckerman propounds these arguments as mere conclusory statements, without any meaningful citation to legal authority in support of the arguments. As such, the undersigned declines to undertake further review or analysis of the arguments, and declines to construe or research Zuckerman's arguments for her. Thus, the undersigned **FINDS** that these arguments afford no basis for a motion to dismiss.

### III. CONCLUSION AND RECOMMENDATION

Accordingly, based on the forgoing, the undersigned **FINDS** that, with respect to the arguments raised in the motion to dismiss [ECF No. 4], Plaintiff's Complaint contains the requisite statements on which relief may be granted (including the grounds therefor), under Fed. R. Civ. P. 8. Correspondingly, the undersigned **FINDS** that the motion to dismiss fails under any applicable standard set forth under Fed. R. Civ. P. 12. Thus, the undersigned **RECOMMENDS** that Zuckerman's motion to dismiss [ECF No. 4] be **DENIED**.

Any party shall have fourteen (14) days (filing of objections) and then three days (mailing/service) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten

pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to Defendant Zuckerman by facsimile transmission to 904-297-2520; to any other *pro se* parties by certified mail, return receipt requested, to their last known address(es) as shown on the docket; and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**Respectfully submitted September 5, 2023.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE